**J. D. DOTY, Trustee of the Estate of E & A Furniture Manufacturing Company, Inc., Bankrupt, Plaintiff,**

**v.**

**Asa Bishop ATKINSON, Sr., Defendant.**

**No. WC6353.**

United States District Court
N. D. Mississippi, W. D.
Nov. 30, 1966.

478

Strong & Smith, Louisville, Miss., Orma R. Smith, Smith & Smith, Corinth, Miss., for plaintiff.

Alfred A. Levingston, Cleveland, Miss., for defendant.

## MEMORANDUM OPINION

CLAYTON, Chief Judge.

This began as an action by the trustee in bankruptcy to recover claimed preferences in the amount of $50,000 allegedly given to defendant by the bankrupt through endorsement or assignment of certain fire insurance policies on the bankrupt's property. Defendant's answer denied the claimed preferences, and at trial to the court, concessions and stipulations eliminated all issues except with respect to the assignment to defendant of an interest in the proceeds of the fire insurance policies of a value of $20,000. A summary of the undisputed facts will be stated as they bear upon the case as now made which is before the court on briefs of the parties.

On July 19, 1962, property belonging to the bankrupt was damaged by fire. A part of the fire damage was to an on hand inventory which was destroyed upon which there were in effect certain fire insurance policies with respect to which the aforementioned assignment in favor of defendant applied. Approximately eight days after the fire, $20,000 was paid by defendant to the bankrupt in exchange for the assignment of the proceeds of said insurance policies to the extent of $20,000 to defendant. After the fire, the bankrupt did not at any time give notice to creditors as is required by § 276, Mississippi Code 1942. That statute reads as follows:

In case of the destruction of a stock of merchandise by fire upon which there is insurance against such loss, the holder of such insurance policies shall within five days after such loss notify his creditors to whom he is indebted for merchandise, of his loss and the amount of insurance carried, and no such policy or policies of insurance shall be transferred or assigned for ten days after such notice, nor shall any such insurance be paid for fifteen days next after the occurrence of any such fire.

Clearly the assignment to defendant on the eighth day after the fire was directly contrary to the clear and explicit provisions of this statute and, at the end of the hearing and after oral arguments of counsel, the court held that this assignment was void as being contrary to § 276, but, since the assignment was not to secure the payment of an antecedent debt and since it in no way diminished the bankrupt estate *at the time of its execution* because defendant had paid $20,000 therefor, the court reserved disposition of the rights of the parties growing out of payment prior to bankruptcy to the bankrupt by defendant of the sum of $20,000 and the subsequent receipt by defendant of the same amount paid from the proceeds of the insurance pursuant to the void assignment. That question is now before the court for disposition on briefs, as is the correctness of its original holding, which the parties were also requested to brief.

Resolution of the issues presented in this situation has been quite difficult. But, the court is now convinced that it should adhere to its original holding that the failure on the part of the bankrupt to comply with the provisions of § 276, Mississippi Code 1942 (Recompiled) made void the assignment of $20,000 of the proceeds of the insurance policies to defendant. It is also now persuaded to the view that defendant, with the

payment of $20,000 to him, became the trustee for the creditors of the bankrupt and that, therefore, plaintiff is entitled to judgment for that amount against defendant.

■ The statute with which we are concerned appeared for the first time in the statutory law of Mississippi as Chapter 100, General Laws of 1908. It was derived from Senate Bill No. 35, which was approved finally on March 6, 1908. That law in its original form is attached hereto as an appendix. All sections contained in this original act were carried forward in the various Codes and now appear in the current Code [Mississippi Code 1942 (Recompiled)] and are designated as §§ 274, 276, 277 and 278. There has been no substantial change in any of these statutes since adoption. Inasmuch as these statutes were all passed as a part of one bill, it is clear that proper construction of any one of them requires consideration of the entire Act in order to properly discern legislative intent.

■■ The caption of the Act deals with two separate but related subjects. The first subject is the sale of stocks of merchandise in bulk. As to this subject, the caption states, "An Act for the prevention of frauds in the sale of stocks of merchandise in bulk." The legislature intended to prevent fraud in connection with the bulk sales of stocks of merchandise. Section 1 is the section of the Act which carries this legislative intention into effect. This section does not prohibit the sale of a stock of merchandise in bulk, but rather it provides that where such a sale has been made, it "shall be presumed to be fraudulent and void as against the creditors of the seller" unless at least five days before the sale the seller and the purchaser have performed certain acts with reference to the sale. The sale is not prohibited, but after it has been made, it is presumed to be fraudulent and void as against the creditors of the seller if there has been no compliance with the procedure established by this section.

The second subject with which the Act deals is "to provide for the transfer of insurance policies upon stocks of merchandise." It is to be noted here that a *fraudulent* transfer is not mentioned. The caption simply states that it is an Act to provide for the transfer of insurance policies.

Section 2, which is the section of the Act applicable here, is simple in its language and certainly the intent of the legislature can be determined from the clear words used. It provides that in the case of destruction of a stock of merchandise by fire upon which there is insurance against such loss, the holder of such insurance policy shall within five days after such loss notify his creditors to whom he is indebted for merchandise of its loss and of the amount of insurance carried. Thus far it is noted that the statute simply requires the holder of the insurance policies to give the stated notice. The legislature further provided that no such policy or policies of insurance shall be transferred or assigned for ten days after such notice. This is simply a prohibition against the transfer or assignment for a period of ten days after such notice had been given. There is a further provision which prohibits the payment of any such policy "for fifteen days next after the occurrence of any such fire."

This section of the Act by its plain terms lays down the rules by which an assignment or transfer of insurance carried on such a stock of merchandise can be made. The question of whether the assignment or transfer is fraudulent or is made for the purpose of defrauding creditors does not appear to have been in the mind of the legislature.

In the light of the clear and unambiguous provision of Section 2 of the original Act (now section 276, Mississippi Code 1942) defendant's argument that the absence of a provision therein that an assignment when made without complying with its provisions shall "be presumed fraudulent and void as against the creditors of the assignor" evidences an intent on the part of the legislature

480

that assignments made in violation of the terms of the statute shall not be void but shall be valid must fail. For this court to hold otherwise would be to say that this statute is meaningless.

Numerous cases have been decided with respect to section 274, Mississippi Code 1942 (which was section 1 of the original Act aforementioned), commonly known as the "Bulk Sales Law". Typical of such cases are Orgill Bros. v. Gee, 152 Miss. 590, 120 So. 737; Walton v. Walter Fisher Co., 146 Miss. 291, 111 So. 364, and Cain v. Pratt, 224 Miss. 288, 80 So.2d 41.

In *Walton*, inter alia, the court used language consistent with the rules applied in most of the bulk sales law cases, as follows:

> The sale and purchase of a stock of merchandise without compliance with the requirements of the statute is void, notwithstanding such sale and purchase was made in good faith and for value. The purchaser takes the goods at the peril of the statute not having been complied with. He must see that it is complied with. The purpose of the statute was to make the sale of stocks of merchandise in bulk prima facie fraudulent as to the creditors of the seller. Such prima facie case can only be met by the purchaser by showing that the statute was complied with. * * *

The Mississippi courts apparently have dealt with section 276, the one with which we are primarily concerned here, only twice. In re Star Grocery Co. (People's Bank and Trust Company v. Rogers), 2 F.Supp. 21 (D.C.Miss.1933) involved the assignment before loss by fire of two policies of insurance on a stock of merchandise. The business sign statute was held to be inapplicable because the policies before loss were executory contracts and not personal property within the meaning of the law. It also held that the Bulk Sales Law had no application because a fire is not a sale, nor is an insurance policy a contract of sale of the property covered by the policy. As to section 276, the court said, "Section 3354 has no application except to transfers or assignments made *after the fire occurs*." (Emphasis added.)

The only light this case throws on the problem is that section 276 applies to assignments made after the fire occurs, such as the situation in the case here.

The only other case which deals with this statute is the case of Citizens' National Bank v. Yazoo Grocery Co., 113 Miss. 87, 73 So. 877 (1917). In this case there was involved an assignment after the loss had occurred and the court determined that the assignee held the funds as trustee for the benefit of assignor's creditors and that the statute was adopted for the protection of creditors. Among other things, the court said:

> We are of opinion that the assignment of the proceeds of the insurance policy by the debtor to appellant bank, without notice to his creditors within five days after such loss, and the assignment being made before the expiration of 10 days after the fire and such notice, and the payment of the policy to the assignee bank before 15 days elapsed after the fire, was a flagrant violation of the statute. * *

> The violation of the law by the appellant in obtaining the proceeds of the policy and appropriating it to the payment of its own claim and other debts due by the debtor, as directed by him, to the exclusion of the claims of appellee creditors, renders appellant trustee of the funds for the benefit of all creditors. * * *

> We think the statute was enacted for the purpose of preventing what happened in this case. It was evidently intended to protect all creditors, and if it does not apply in the case before us, it is indeed valueless for that purpose.

■ It is to be noted that the statute is silent as to the penalty for its violation. The general rule is that such an assignment which is made in violation of a statute is void. 17 C.J.S. Contracts

§ 203, p. 1008; 17 Am.Jur.2d, Contracts, § 165, p. 521; Odineal v. Barry, 24 Miss. 9 (1852); Deans v. McLendon, 30 Miss. 343 (1855); Bohn v. Lowry, 77 Miss. 424, 27 So. 604 (1900) and Young v. State Life Ins. Co., 91 Miss. 710, 45 So. 706 (1908). These and other authorities recognize exceptions to this general rule, but the case here does not present such an exception. Cf. Young v. State Life Insurance Co., supra. See also Dodson v. McCurnin, 178 Iowa 1211, 160 N.W. 927, L.R.A.1917C, 1084.

The statute with which we are concerned here has been on the books since 1908 and has been carried forward without change to the current statutes. The Citizens' National Bank case, supra,[1] was decided in 1916 and no change has been made in the statute since that time.

The title to the Act by which this statute first came into being (see appendix, attached hereto) expresses in clear language the intent of the legislature. So also does the language of the statute.

In Hamner v. Yazoo Delta Lumber Company, 100 Miss. 349, 56 So. 466 (1911), the Supreme Court of Mississippi, inter alia, said:

> A statute which is plain and unambiguous, clear and free from doubt, is its own interpreter, and in such cases it is not necessary to resort to any rule of construction in order to ascertain its meaning. It is not for the judiciary to determine the wisdom, but simply to enforce the statute as it is written, and leave the responsibility where it justly belongs—upon its creator, the legislature.

■■ Here the statute is plain and unambiguous, clear and free from doubt as to its meaning. And, although its application here will work a hardship on defendant, it "is not for the judiciary to determine the wisdom, but simply to enforce the statute as it is written." Nor will it do for this court to listen to the appealing arguments of defendant that a court of bankruptcy is a court of equity and that equity dictates here an exemption for defendant from the application of this statute, for it must be remembered that one of the basic maxims of equity must apply here: "Equity follows the law."

■■ No other such statute has been cited by counsel, nor has one been found. Apparently, this law is an original creation of the Legislature of the State of Mississippi. The obvious intent of the legislature and the force and effect of this statute is to freeze the proceeds of the insurance in the hands of the insurance companies until creditors of the holder of the insurance have had an opportunity to protect themselves in regard to the loss. Here the stock of merchandise which was destroyed by fire consisted of property or assets in the hands of the holder of these insurance policies to which the holder's creditors had a right to look for the payment of their debts. Such assets being destroyed by fire, the statute acts to substitute the proceeds of the insurance thereon for the stock of goods itself. This is for the protection of all the creditors, and when the insurance is paid, contrary to the requirements of this statute, without notice to the creditors and without the lapse of the statutory time specified within which the creditors could protect themselves, it seems clear that such a transaction is the very kind prohibited and thus condemned by the statute. If the assignments made to defendant and payment made to him pursuant thereto are not void under this law, then the statute is of no effect and is meaningless.

---

1. It strengthens this court's belief in its disposition of this unique case to note that the Supreme Court of Mississippi in deciding the Citizens' National Bank case cited to support its view the case of Fecheimer-Keifer Co. v. Burton, 128 Tenn. 682, 164 S.W. 1179, 51 L.R.A., N.S., 343 (which dealt with violations of a "Bulk Sales Law") and Ruling Case Law, Vol. 12, pp. 529, 530 (also dealing with construction of "Bulk Sales Law Statutes"). Thus that court recognized the similarity or close relationship of the two statutes.

An order will be entered in accordance with this opinion.

## APPENDIX
### CHAPTER 100.
### S. B. NO. 35.

AN ACT for the prevention of frauds in the sale of stocks of merchandise in bulk, and to provide for the transfer of insurance policies upon stocks of merchandise.

To prevent fraudulent sales of merchandise—what presumed to be fraud.

SECTION 1. Be it enacted by the Legislature of the State of Mississippi, That a sale of any portion of a stock of merchandise, otherwise than in the ordinary course of trade, or in the regular and usual prosecution of the seller's business, and a sale of an entire stock of merchandise in gross, shall be presumed to be fraudulent and void as against the creditors of the seller, unless, at least five (5) days before the sale:

(a) the seller shall have made a full and detailed inventory, showing the quantity, and, so far as can be done by the exercise of reasonable diligence, the cost price to him of each article sold; and

(b) the purchaser shall have in good faith made full and explicit demand of the seller for the name, place of residence and business and post office address of each of his creditors, and the sum due each, and to which demand the seller shall have made full and truthful written answers; and

(c) the purchaser shall have in good faith notified personally or by mail each of the seller's creditors, of whom he has knowledge, or with the exercise of reasonable diligence could have acquired knowledge, of the proposed sale and of the cost price of the merchandise proposed to be sold and of the price to be paid therefor by the proposed purchaser.

In case of loss by fire, creditor to be notified.

SECTION 2. That in case of the destruction of a stock of merchandise by fire upon which there is insurance against such loss, the holder of such insurance policies shall within five days after such loss notify his creditors to whom he is indebted for merchandise, of his loss and the amount of insurance carried, and no such policy or policies of insurance shall be transferred or assigned for ten days after such notice, nor shall any such insurance be paid for fifteen days next after the occurrence of any such fire.

Act not applicable to official sales under orders of court.

SECTION 3. That nothing in this Act shall apply to official sales by sheriffs, constables, executors, administrators, guardians, receivers, commissioners, trustees in bankruptcy, or any public officer.

Rules of evidence not changed by this law.

SECTION 4. That, except as especially provided in this Act, nothing herein contained nor any act hereunder, shall change or affect the present rules of evidence or the present presumption of law.

SECTION 5. That this Act shall take effect from and after its passage, Approved March 6, 1908.

