GILLESPIE, Presiding Justice:
This is an appeal from the Chancery Court of the First Judicial District of Hinds County. Laher Spring & Electric Car Corporation (hereinafter Laher) filed an original bill against Battery Warehouse, Inc. requesting judgment in the amount of $27,-974.29, plus interest and costs, the amount due under a promissory note for $21,000 and an open account balance, and against G. S. Dunaway and Irvin L. Breckenridge for personal liability on the above mentioned note. Laher also asked that two sales made by Battery Warehouse to Hoye C. Hollingsworth, d/b/a H. & H. Battery Manufacturing Company, and James L. Gipson, d/b/a Automotive Accessory Supply Company, be declared null and void as a violation of the Bulk Sales Act, Mississippi Code 1942 Annotated section 274 (1956), and that a purchase money lien be impressed upon the merchandise involved or that judgment be given against the purchasers for the reasonable value of the merchandise.
The facts out of which this litigation grew are as follows: Battery Warehouse was formed in 1962 and financed with a Small Business Administration loan through Deposit Guaranty National Bank in Jackson. Its principal business was the wholesaling of batteries and brake shoes. On December 8, 1967, Battery Warehouse gave Laher, one of its suppliers, a note signed *720 by Dunaway as President and Breckenridge as Vice President for $21,000 to cover its account and establish a new line of credit. The note introduced at the trial contained a marginal notation purportedly making Dunaway and Breckenridge personally liable, although they denied that the note contained the notation when it was signed.
In late March 1967 Battery Warehouse’s financial condition had reached the point where Deposit Guaranty National Bank, which was financing Battery Warehouse’s accounts receivable and also held the Small Business Administration loan, refused to extend any further credit and Battery Warehouse was forced to liquidate. On March 31, 1967, Hollingsworth purchased the entire stock of 448 new and junk batteries for $896 and on April 7, 1967, Gipson purchased the entire stock of brake shoes for $1,931.50. Both Hollingsworth and Gipson were told at the time of the purchases that Battery Warehouse was liquidating. The entire proceeds of the sales were paid to Deposit Guaranty National Bank in partial satisfaction of its claim against Battery Warehouse.
Battery Warehouse, Inc. and G. S. Dun-away, individually, admitted Laher’s claim and judgment was rendered against them. The chancellor held that Breckenridge was absolved of personal liability on the note because Laher had failed to meet the burden of proof that the notation on the note making Dunaway and Breckenridge personally liable was on the note at the time of their signatures and because the language of the notation was insufficient to hold him personally liable.
The chancellor found that the value at the time of the sale of the merchandise sold to Gipson was $1,931.50 and of that sold to Hollingsworth was $896. He further found that the evidence overcame any presumption of fraud concerning the two sales and that the sales were not within the purview of the Bulk Sales Law. The suit was dismissed as to Hollingsworth and Gipson.
The following questions are presented on appeal: (1) Did the notation on the note make Breckenridge personally liable? (2) Did the sales to Hollingsworth and Gipson come under the purview of the Bulk Sales Law? (3) Did the evidence support the chancellor’s finding as to the value of the merchandise ?
The note given to Laher by Battery Warehouse and signed by G. S. Dun-away, President, and Irvin L. Breckenridge, Vice President, contained the marginal notation : “This note is secured by signatories signing hereon.” The first five words were part of the printed form note; the last four were typewritten. Appellant contends that the notation was sufficient to hold Breckenridge personally liable on the note. We are of the opinion that the chancellor correctly construed the marginal notation on the note as failing to personally bind the appellee Breckenridge. He did not sign the note personally but only in his capacity as Vice President of Battery Warehouse. Therefore, the phrase “signatories signing hereon” did not refer to Breckenridge who was not a signatory as an individual. Because of the failure of the notation to personally bind Breckenridge, it is unnecessary to reach the question concerning the burden of proof.
The Bulk Sales Law provides, in outline, that the sale of any portion of a stock of merchandise other than in the ordinary course of trade shall be presumed to be fraudulent and void as against creditors of the vendor unless (1) the vendor should at least five days before the sale, make a detailed inventory showing the quantity and cost price to the vendor of each article included in the sale, and unless (2) the vendee demand and receive from the vendor a written list of the vendor’s creditors with the amount due each, and unless (3) the vendee should at least five days before the sale, notify every creditor of the proposed sale and its terms.
In determining whether the Bulk Sales Law is applicable in the present case, sev *721 eral questions must be considered. First, since Battery Warehouse was essentially a wholesaler, although occasional retail sales were made, does the Bulk Sales Laws apply? This Court has not had occasion to pass on the question, but other jurisdictions in which the Bulk Sales Laws are made applicable under a general provision to “a stock of merchandise,” such as in ours, have held that the law included sales by wholesalers. See Annot., 46 A.L.R. 982 (1927). The language employed in our statute makes no distinction between retailers and wholesalers. It protects the creditors of wholesalers as well as the creditors of retailers from the evils which the statute sought to prevent.
The chancellor held as a matter of law that violation of the provisions of the statute created only a prima facie case of fraudulent sale which could be rebutted and which was successfully rebutted in the present case by showing that the merchandise was sold for a reasonable price and the proceeds turned over to the creditor bank. However, this Court has held on many occasions that violation of the statute creates a conclusive presumption of fraud that is irrebuttable by any showings of good faith.
In Orgill Bros. v. Gee, 152 Miss. 590, 120 So. 737 (1929) this Court said that “evidence of good faith and payment of value by the purchaser is no defense to a suit by the creditors of the seller to hold the purchaser liable for the debts to the extent of the value of the goods sold,” and in Walton v. Walter Fisher Co., 146 Miss. 291, 111 So. 364 (1927), said a sale was void even though the “sale and purchase was made in good faith and for value.” In Peters Branch International Shoe Co. v. Gunn, 121 Miss. 679, 83 So. 742 (1920) this Court said:
The fact that the fraudulent vendors of the property applied the proceeds of the sale to the payment of some of the creditors does not discharge this debt as to either defendant. The sale was fraudulent and void and amounts to no sale at all. (121 Miss, at 697, 83 So. at 744)
The two sales involved in the present case were for the purpose of liquidating the company and were not in the ordinary course of trade. It was admitted that the provisions of the statute were not complied with. In the Walton case this Court said:
The purpose of the statute was to make the sale of stocks of merchandise in bulk prima facie fraudulent as to the creditors of the seller. Such prima facie case can only be met by the purchaser by showing that the statute was complied with. He must show that the required inventory was made, and notice to the creditors given, otherwise he takes the goods subject to the debts of the seller. 146 Miss, at 296, 111 So. at 365.
Since the provisions of the statute were not followed, the sales to Hollingsworth and Gipson were void as to the creditors of Battery Warehouse, and Hollingsworth and Gipson are liable to the creditors to the extent of the value of the goods sold.
Appellant also assigned as error the finding of the chancellor that the value of the brake shoes sold to Gipson was only $1,931.50. In our opinion the evidence was sufficient to justify this finding. The finding of facts of the chancellor where the testimony is in conflict will not be disturbed on appeal unless manifestly wrong.
There is no merit in appellees’ contention that the Deposit Guaranty National Bank, who held a lien on the assets of Battery Warehouse, was a necessary party to the suit. Peters Branch International Shoe Co. v. Gunn, supra.
For the reasons stated, the decree is reversed in part and a decree entered here rendering judgment in favor of Laher against Gipson for $1,931.50, plus interest from the date of sale, and against Hollings-worth for $896, plus interest from the date *722 of sale. In all other aspects the chancellor’s decree is affirmed.
Reversed in part and rendered; affirmed in part.
JONES, PATTERSON, INZER and ROBERTSON, JJ., concur.